**Marina Mezitis DIORINOU, Petitioner,**

**v.**

**Nicholas H.E. MEZITIS Respondent.**

**No. 00 CIV. 8241(LLS).**

United States District Court,
S.D. New York.

Nov. 28, 2000.

Law Offices of Robert D. Arenstein, New York City (Robert D. Arenstein, of counsel), for petitioner.

Gartner, Bloom & Greiper, New York City (Stuart F. Gartner, Arthur P. Xanthos, of counsel), for respondent.

## AMENDED OPINION and ORDER

STANTON, District Judge.

Petitioner Marina Mezitis Diorinou seeks an order pursuant to the Hague Convention on the Civil Aspects of Child Abduction, as implemented by the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11601 *et seq.*, requiring her former husband Nicholas H.E. Mezitis to return their two children, Elias Mezitis and Alexandra Mezitis, to Greece, where Ms. Diorinou resides. For the following reasons her petition is granted.

### Background

Ms. Diorinou, a citizen of Greece, and Dr. Mezitis, a citizen of the United States, were married in 1988 in New York. Their two children, Elias (now age seven) and Alexandra (now age five) were both born in New York and are dual citizens of the United States and Greece. The family lived together in New York, where Dr. Mezitis is Chief of the Clinical Pharmacology Program, Division of Endocrinology, Diabetes and Nutrition, at St. Luke's–Roosevelt Hospital and an assistant professor of clinical medicine at Columbia University.

In June of 1995, the parties and their children flew to Greece for a summer vacation. The evidence and the parties' contentions are in conflict about happenings after that. It is clear that the parents separately took some trips back and forth, but the children remained in Greece all that summer, and thereafter in Greece with their mother until their father Dr. Mezitis brought them back to New York on October 1, 2000, over five years later.

### Litigation in Greece

On September 14, 1995, Ms. Diorinou commenced a custody proceeding in the Athens Court of First Instance in Greece, in which she applied for and obtained temporary custody of the children, after a hearing of which Dr. Mezitis received notice but did not attend. After a delay to allow resolution of Dr. Mezitis' Hague petition (see below), on January 30, 1998 the Athens court granted Ms. Diorinou primary custody of the children. On Dr. Mezitis' appeal from that decision, it was affirmed by the Athens Court of Appeals by order published on May 6, 1999. He has filed an appeal with the Greek Supreme Court, which is still pending.

In 1996, Dr. Mezitis filed a Hague Petition in the Thessaloniki Court of First Instance for the return of the children to New York. It was denied on July 29, 1996. After trial, the Thessaloniki court found that Dr. Mezitis was not exercising his custody rights at the time the children were brought to Greece, that he had consented to their remaining in Greece permanently, and that there was a serious risk that returning them to New York would expose them to physical or psychological harm. Dr. Mezitis appealed that decision to the Court of Appeals, which affirmed it on May 12, 1997. He then appealed to the Greek Supreme Court, which affirmed on July 2, 1998. That fully-litigated determination that Ms. Diorinou did not wrongfully remove the children to Greece is highly significant in this proceeding, for under ICARA I must give it full faith and credit in determining that Greece is the children's habitual residence (*see* pp. 144–45 below).

Dr. Mezitis obtained visitation rights from the Thessaloniki Court of First Instance, on the condition that his visitation be in Greece.

In November 1998, Dr. Mezitis petitioned the Thessaloniki Court of First Instance seeking to enforce a judgment of the New York State Supreme Court (discussed below) granting him full custody of the children. The Court of First Instance "recognized" the New York court's order as valid, but the Greek Court of Appeals by judgment published on July 16, 1999

reversed, because of the conflicting Greek award of custody to Ms. Diorinou, referred to above.

### Litigation in the United States

. On September 11, 1995, Dr. Mezitis filed an action for divorce and custody of the children and a writ of *habeas corpus* for return of the children in the Supreme Court of the State of New York, County of New York. On September 27, he filed a petition under the Hague Convention and ICARA in the United States District Court for the Southern District of New York. While Ms. Diorinou received notice of those actions, she never appeared personally in them, although she did appear by her attorneys to contest service in the *habeas* proceeding.

On February 27, 1997, Justice Fisher–Brandveen of the New York State Supreme Court granted Dr. Mezitis' *habeas* petition and issued a warrant for Ms. Diorinou's arrest and a precept for the return of the children.

On May 28, 1997, the Honorable Loretta Preska of the United States court dismissed Dr. Mezitis' ICARA petition without prejudice, for lack of jurisdiction because the children were living in Greece.

On July 24, 1997, Justice Heitler of the New York State Supreme Court awarded temporary custody of the children to Dr. Mezitis. Justice Heitler also granted Dr. Mezitis' divorce petition on November 14, and awarded him full custody of the children on November 17, 1997. It is clear that while Justice Heitler was aware generally that several proceedings were pending in Greece concerning custody, as well as Dr. Mezitis' Greek Hague petition, she was misinformed and unaware that the Greek court had already denied Dr. Mezitis' Hague petition, and that its factual findings and judgment had been affirmed by the Greek Court of Appeals (*see* pp. 141–42 above, pp. 144–45 below). It is

Justice Heitler's award of custody to Dr. Mezitis which the Greek Court of Appeals refused to honor.

\*     \*     \*     \*     \*     \*

On October 1, 2000, using duplicate passports (which he appears to have obtained fraudulently) for the children, Dr. Mezitis removed them from Greece and brought them to New York, in violation of the custody orders of the Greek courts.

On October 27, 2000 Ms. Diorinou filed the instant petition for return of the children to Greece pursuant to the Hague Convention and ICARA.

### Discussion

The Hague Convention, which became effective in the United States in 1988,[1] provides for the prompt return of children under the age of 16 who are abducted to or wrongfully retained in a country, provided that both their habitual residence and the country to which they were abducted are parties to the Convention.[2] Under Article 19 of the Convention, and 42 U.S.C. § 11601(b)(4), the court may determine the merits of an alleged abduction but not the merits of any underlying custody dispute.

■ In order to prevail on her claim, Ms. Diorinou must establish that her children were "wrongfully removed or retained within the meaning of the Convention." 42 U.S.C. § 11603(e)(1)(A). Under the Convention, the removal of a child is wrongful when:

> (a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

---

**1.** *See* ICARA, 42 U.S.C. § 11601, *et seq.*

**2.** Greece became a party to the Convention in 1992.

Hague Convention ("H.C."), Art. 3. Therefore, Ms. Diorinou must prove by a preponderance of the evidence that Greece was the children's "habitual residence" before Dr. Mezitis removed them to the United States, and that she was exercising her parental custody rights over the children at the time of removal, under the laws of Greece. Once Ms. Diorinou has made such a showing, the children must be returned to Greece unless Dr. Mezitis establishes any one of four affirmative defenses.[3]

■ It is uncontroverted that Ms. Diorinou has custody rights in Greece and that she has been exercising them there. The sole point of contention between the parties is whether Greece or the United States is the children's habitual residence.

Ms. Diorinou argues that the children's habitual residence is Greece, where they have both been living since June 1995. Dr. Mezitis contends that their habitual residence is actually the United States, from whence they were wrongfully removed to Greece in 1995 by their mother.

Neither the Hague Convention nor ICARA defines the term "habitual residence," leaving the courts to interpret it in relation to the facts of each case. *Harkness v. Harkness*, 577 N.W.2d 116, 121 (Mich.App.1998) ("The intent is for the concept to remain fluid and fact-based without becoming rigid."). In this case, that is easy.

That the children have been exclusively living in Greece with their mother for the past five years, during which time they have been attending school, establishing friendships, receiving medical treatment, and enjoying active involvement with Ms. Diorinou's extended family is conclusive evidence that, from their perspective, they are "settled" in Greece. *Feder v. Evans–Feder*, 63 F.3d 217, 218 (3d Cir.1995) (habitual residence is where child "has been physically present for an amount of time sufficient for acclimatization and which has a 'degree of settled purpose' from the child's perspective."); *Zuker v. Andrews*, 2 F.Supp.2d 134, 137 (D.Mass.1998) (discussing cases that "illustrate further the requirement that there be a 'settled purpose.'"); *Levesque v. Levesque*, 816 F.Supp. 662, 666 (D.Kan.1993) ("arrangements to keep child in Germany 'amounted to a purpose with a sufficient degree of continuity to enable it properly to be described as settled'").

■ Nevertheless, Greece may not be their habitual residence if their original removal to Greece was wrongful, because a parent cannot create a new "habitual residence" by the wrongful removal and sequestering of a child. *See Nunez–Escudero v. Tice–Menley*, 58 F.3d 374, 379 (8th Cir.1995) (Convention does not "reward an abducting parent and create an impermissible presumption that the child's habitual residence is wherever the mother happens to be.").

The Greek courts have already determined that the children's detention in Greece in 1995 was not wrongful under the Hague Convention, and that Dr. Mezitis intended that the children remain in Greece permanently. As stated by the Thessaloniki Court of Appeals:

(3) that more than one year has elapsed between the wrongful removal of the children and the commencement of this Hague Proceeding, by a preponderance of the evidence; H.C., Art. 12, 42 U.S.C. § 11603(e)(2)(B); or

(4) that the return of the children is against the fundamental principles of the United States relating to the protection of human rights and fundamental freedoms, by clear and convincing evidence; H.C., Art. 20; 42 U.S.C. § 11603(e)(2)(A).

---

**3.** He must demonstrate:

(1) that Ms. Diorinou was not actually exercising her custody rights at the time or removal or retention, or had consented to the children's removal, by a preponderance of the evidence; H.C., Art. 13(a); 42 U.S.C. § 11603(e)(2)(B);

(2) that there is a grave risk that returning the children will expose them to psychological or physical harm, by clear and convincing evidence; H.C., Art. 13(b); 42 U.S.C. § 11603(e)(2)(A);

Under these circumstances, the stay of the children in Greece was attributable to the aforementioned conduct of the applicant [Dr. Mezitis] which rendered the stay inevitable, and does not constitute a wrongful retention of the children on the party of the respondent [Ms. Diorinou], i.e., a retention violating the custody rights of the children that she jointly had with the applicant according to the laws of the State of New York. Accusing the respondent of wrongful retention would contradict common sense, since ... [here follows a discussion of the facts] ... The applicant's conduct ... [proves] that he did not actually exercise his custody rights on the children during this period, when he demonstrated no interest towards them.... These facts, in conjunction with the fact that he had previously agreed with the respondent that they would proceed with the divorce and that she would keep the children, have their custody rights and settle in Thessaloniki, where the children would receive a "Greek education", lead to the conclusion that the applicant had acquiesced to the retention of the children by the respondent not only tacitly with his conduct but also explicitly.... The children's mother, in view of the fact that her separation from the applicant is final and will end with the issue of the divorce judgment, the trial of which is pending, cannot live with the applicant in the same house any longer and thus, if the children were forced to leave their mother, there would be grave danger of exposing them to psychological harm and place [sic] them in an intolerable situation.... Therefore, it is proven that not only was the retention of the children in Greece by their mother under the circumstances described not wrongful, given that it did not take place in violation of the custody rights of the applicant, and additionally that the circumstances which justify not ordering the return of the children are present, according to Article 13 of the Hague Convention.

Judgment No. 1957/1997 of the Court of Appeal of Thessaloniki, Fourth Chamber, dated May 12, 1997 at 9–11 (official translation), *aff'd,* Judgment No. 1003/1998 of the Greek Supreme Court, dated June 2, 1998.

■ That judgment must be given full faith and credit by this court:

Full faith and credit shall be accorded by the courts of the States and the courts of the United States to the judgment of any other such court ordering or denying the return of a child, pursuant to the Convention, in an action brought under this chapter.

42 U.S.C. § 11603(g). Full faith and credit is given to prior adjudications of Hague petitions by foreign states, provided that the decisions were not jurisdictionally deficient under the Convention. *See e.g., Morton v. Morton,* 982 F.Supp. 675, 685 (D.Neb.1997) (pursuant to ICARA, "if the elements of the 'full faith and credit' defense exist now, I must give preclusive and dispositive weight to the decisions of both the Utah Court and the German court ..."); *David S. v. Zamira S.,* 151 Misc.2d 630, 574 N.Y.S.2d 429 (N.Y.Fam.Ct.1991) (" 'full faith and credit' shall be accorded by the court of the United States 'to the judgment of any other [contracting State's] court ordering or denying the return of a child, pursuant to the Convention") (brackets in original). *Cf. Ostevoll v. Ostevoll,* No. C–1–99–961, 2000 WL 1611123 (S.D.Ohio, Aug.16, 2000) (no full faith and credit to foreign court's temporary determination of child custody where at time of determination of ICARA petition, no other Hague petition had been filed); *Feder v. Evans–Feder,* 866 F.Supp. 860, (E.D.Pa. 1994), (no full faith and credit given to Australian Family Court's determination of habitual residence because under Convention that determination is left to authorities of county in which child is living at time petition is filed) *rev'd on other grounds,* 63 F.3d 217 (3d Cir.1995).

In this instance, the Greek courts adjudicating Dr. Mezitis' petition had jurisdiction under the Hague Convention, since the children were located in Greece when his petition was filed there. The issue tried and decided in those proceedings—whether the children's residence in Greece was wrongful—is the one which Dr. Mezitis wishes to re-litigate here. The parties are identical. The final judgment of the Greek Supreme Court, the highest court in Greece, after full litigation of the issue is entitled to full faith and credit in this proceeding, and I would in any event, as a matter of comity and *res judicata*, adopt its determination that the children were not wrongfully retained in Greece.

Accordingly, the children clearly having become "settled" in Thessaloniki over the past five years, I conclude that Greece is their habitual residence.

### Custody decisions of the New York State Supreme Court

█ Dr. Mezitis argues that the statements by the New York State Supreme Court, in his custody and *habeas corpus* proceedings, that the children are domiciliaries of New York should be granted full faith and credit in this court's determination of habitual residence under the Hague Convention.

In her custody decision, Justice Heitler stated:

This Court further believes that New York State is the home state of these children. They clearly have resided in New York for more than six months prior to the commencement of this proceeding.

They were born here and they lived here until they were wrongfully removed by their mother.

*Mezitis v. Mezitis*, No. 310236/95 (N.Y.Sup.Ct. Nov. 17, 1997) tr. at. 195. Moreover, in an order relieving Ms. Diorinou's counsel in the *habeas* proceeding, Justice Fisher–Brandveen stated that:

Irrespective of any finding by the Greek Courts, the children were domiciliaries of New York State all their lives until shortly before the events that lead up to this *habeas corpus* proceeding. The New York Courts have jurisdiction to decide custody issues as provided in the Hague Convention. Once custody of the children is determined, the Greek Courts are charged with resolving the return of the children under the Hague Convention.

*Mezitis v. Mezitis*, No. 122227/95, Decision and Order dated February 6, 1997 at 1. It is of course true that the children were New York domiciliaries until June 1995, and no Greek court has found to the contrary. The issue here is their habitual residence from 1995 to 2000.

Apart from the different time periods involved, the New York Supreme Court's findings of domicile pertained solely to the issue of custody under New York law, and under the Hague Convention are not binding on this court's determination of habitual residence or wrongful removal:

The sole fact that a decision relating to custody has been given in or is entitled to recognition in the requested State shall not be a ground for refusing to return a child under this Convention, but the judicial or administrative authorities of the requested state may take account of the reasons for that decision in applying this Convention.

H.C., Art. 17.

In considering the reasons for the New York state courts' decisions, one must be struck by the facts that (although notified of the proceedings) Ms. Diorinou was not present or heard, and Dr. Mezitis did not disclose either that he had lost his Greek litigation on the same issues, or the Greek courts' factual findings and reasoning. Indeed, Justice Heitler stated in her November 17, 1997 ruling that counsel had advised her "that there had been no final decisions with regard to any of those [Greek] proceedings" (tr. at 177), although in fact Dr. Mezitis' Hague petition had

already been denied, and the denial affirmed. (Affirmance quoted in part at p. 144 above).

Rulings resting on such a one-sided and defective presentation cannot be taken as conclusive on the narrow issue whether the 1995 retention of the children in Greece was wrongful, when contrasted with its full litigation and determination in Greece and ICARA's grant of full faith and credit to judgments under the Hague Convention (such as Greece's) denying return of a child, but not to custody decisions.

### United States District Court's decision in Dr. Mezitis' ICARA and Hague petition

Dr. Mezitis also argues that, in dismissing his ICARA and Hague petition, Judge Preska determined that the children's habitual residence was the United States, and that determination should be given full faith and credit.

In her decision, Judge Preska stated, "Because of Mrs. Mezitis' taking the children from New York, from their habitual residence, I do not have the power to grant the relief sought by the defendant because I am not 'authorized to exercise jurisdiction in the place where the child is located at the time the petition is filed.'" *Mezitis v. Mezitis*, 95 Civ. 7873 (S.D.N.Y. Jan. 12, 1996), tr. at 3.

Since she had no jurisdiction, Judge Preska's remark about their "habitual residence" was dictum, not a determination on the merits. Of course, it was correct: up until June 1995 New York was the children's habitual residence. The issue in this case is where their habitual residence was in 2000, before Dr. Mezitis removed them from Greece, where they had lived for the past five years.

### Conclusion

For the above reasons, and after hearing the parties by counsel on November 15, 2000, I find and conclude that:

On or about October 1, 2000, respondent Nicholas H.E. Mezitis wrongfully, in breach of petitioner Marina Mezitis Diorinou's custody rights, which she was actively exercising under the laws of Greece, removed their children Elias (aged seven years) and Alexandra (aged five years) Mezitis from their habitual residence with their mother in Thessaloniki, Greece and brought them to New York, New York, U.S.A. By order entered today, he is directed to return them forthwith.

Ms. Diorinou has claimed costs pursuant to 42 U.S.C. § 11607(b), and Article 26 of the Hague Convention, to which Dr. Mezitis has offered no opposition. The foregoing determination regarding the children's return will not be delayed to address the issue of costs. Ms. Diorinou has leave to file a separate application, on notice to the respondent, detailing and substantiating her costs, and entitlement thereto.

So ordered.