Radu v. Toader

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 22nd day of February, two thousand twelve.

PRESENT: DENNIS JACOBS,
                <u>Chief Judge</u>,
    GUIDO CALABRESI,
    ROSEMARY S. POOLER,
                <u>Circuit Judges</u>.

- - - - - - - - - - - - - - - - - - - - - -X

IULIAN CRISTIAN RADU, In the Matter of
L.D.R., an infant under the age of 16,

    *Plaintiff-Appellant*,

    -v.-                           11-3546

PETRUTA TOADER, AKA Petruta Nicolaie,
FKA Petruta Radu,

    *Defendant-Appellee*.

- - - - - - - - - - - - - - - - - - - - - -X

**FOR APPELLANT:**        Charles I. Poret (Scott C. Kessenick, <u>on the brief</u>) Dechert LLP New York, NY


**FOR APPELLEE:**        Alyssa B. Cohen (Douglas F. Broder, <u>on the brief</u>) K&L Gates LLP New York, NY

Appeal from a judgment of the United States District Court for the Eastern District of New York (Azrak, <u>M.J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the district court's judgment is **AFFIRMED**.

Petitioner Iulian Cristian Radu appeals from the August 3, 2011 memorandum and order of the United States District Court for the Eastern District of New York denying his petition to compel the return of his son, L.R., to Romania pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 24, 1980, T.I.A.S. No. 11670, S. Treaty Doc. No. 99-11 (the "Convention" or the "Hague Convention"), and the International Child Abduction Remedies Act ("ICARA") implementing the Convention in the United States. <u>See</u> 42 U.S.C. § 1163. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

Radu argues that his ex-wife, respondent Petruta Toader, wrongfully moved L.R. from Romania to the United States in violation of Radu's "rights of custody" under the Hague Convention. We review a district court's factual determinations in cases arising under the Hague Convention for clear error and its legal conclusions <u>de novo</u>. <u>See</u> <u>Blondin v. Dubois</u>, 238 F.3d 153, 158 (2d Cir. 2001).

The Convention defines "rights of custody" to include "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." Hague Convention, art. 5. The Convention distinguishes between rights of custody and rights of access. The latter is also a defined term under the

Convention and means "the right to take a child for a limited period of time to a place other than the child's habitual residence." Id. ICARA similarly defines "rights of access" to mean "visitation rights." 42 U.S.C. § 11602(7). A parent has a "right of custody" if his or her consent is legally required before the other parent may move the child to another country (a "ne exeat" right), and a breach of such right gives rise to a return remedy under the Convention. See Abbott v. Abbott, 130 S. Ct. 1983, 1992 (2010). By contrast, "[t]he Convention provides no return remedy when a parent removes a child in violation of a right of access." Id.

Radu has no ne exeat right. Under Romanian law, a child's domicile is established as the domicile of the parent to whom the child was entrusted by a final and irrevocable court decision. Decision No. 922/2009. If parents do not share the same domicile, then the child's domicile is established by common agreement of the parents, or, absent such agreement, by a court. But that provision does not govern a situation in which sole custody of the child has been granted to one parent. Because the divorce decree entrusted sole custody of L.R. to Toader, giving Radu only a right of visitation, Toader did not need Radu's consent to change L.R.'s domicile. While L.R.'s removal may have violated Radu's rights of access, it did not violate any rights of custody for purposes of the Convention. This interpretation of Romanian law is reinforced by the April 2011 decision of a Romanian court, which denied Radu's efforts to compel the return of L.R. and noted that Radu could not seek L.R.'s return because custody of the child had been entrusted to Toader. See Diorinou v. Mezitis, 237 F.3d 133, 142 (2d Cir. 2001) ("American courts will normally accord considerable deference to foreign adjudications as a matter of comity. In particular, we have observed that comity is at the heart of the Hague Convention." (internal quotation marks, citations, and alteration omitted)).

3

We have considered Radu's remaining arguments and find them to be without merit.  For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**.

                                FOR THE COURT:
                                CATHERINE O'HAGAN WOLFE, CLERK