In the matter of Zofia FILIPCZAK and Blanka Filipczak: infants under the age of 16,

Wojciech Filipczak, Petitioner,

v.

Yashmun (James) Filipczak, Respondent.

No. 11 Civ. 1178 (VM).

United States District Court, S.D. New York.

Dec. 23, 2011.

---

Donald G. Brown, Atlanta, GA, Kelly Catherine Holden, Tiffany A. Buxton, Alston & Bird, LLP, New York, NY, for Petitioner.

Richard Min, Camhi & Min LLC, New York, NY, for Respondent.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

In this matter, petitioner Wojciech Filipczak ("Petitioner") seeks the return of his daughters, Zofia Veronica Filipczak and Blanka Elizabeth Filipczak (together, the "Children") to Poland pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"). Respondent Yashmun (James) Filipczak ("Respondent"), the Children's mother, contests the return of the Children to Poland, citing two exceptions to the Hague Convention's general requirement that children "wrongfully removed" from their country of habitual residence be repatriated.

## I. PROCEDURAL BACKGROUND

On February 22, 2011, Petitioner filed the instant Petition (Docket No. 1) (the "Petition") for the Return of the Children to Poland pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, T.I.A.S. No. 11670, 1343 U.N.T.S. 89, reprinted in 51 Fed.Reg. 10,-

494 (Mar. 26, 1986), and the International Child Abduction Remedies Act, 42 U.S.C. § 11603(b). On July 11, 2011 and July 27, 2011, Respondent filed her response to the Petition and a memorandum of law in opposition to the Petition. (Docket Nos. 9, 12.) On August 10, 2011, Petitioner submitted a reply memorandum of law in support of the Petition. (Docket No. 14.)

On August 22, 2011, at the request of the parties, the Court appointed Virginia LoPreto as guardian *ad litem* for the Children during the pendency of this Petition. (Docket No. 17.) Ms. LoPreto has facilitated videoconferences between the Children and Petitioner and, on October 15, 2011, provided the Court with a helpful and thorough report, which impartially set forth various details regarding the Children's life, both here in the United States and in Poland. (*See* Endorsed Letter from Virgnia A. LoPreto (Docket No. 22) (the "Guardian's Report").)

On September 13, 2011 and October 3, 2011, the Court held an evidentiary hearing (the "Hearing") to determine whether the circumstances of the Children's lives in Poland and the United States support the application of one of the exceptions set forth in the Hague Convention. At the Hearing, the Court heard testimony from both Respondent, in person, and Petitioner, via videoconference from Warsaw. Counsel for each party was also afforded time for argument.

After the Hearing, to gain a better understanding of the circumstances awaiting the Children in Poland, the Court ordered the parties to cooperatively collect and submit certain information regarding divorce proceedings in Poland initiated by the Petitioner. The Court has received from the parties numerous post-Hearing letter submissions, which have supplemented the factual record developed at the Hearing and by the parties' initial submissions to the Court.

## II. FACTUAL BACKGROUND [1]

Respondent and Petitioner were married in Warsaw, Poland on August 27, 2005. Their daughters, Zofia Veronica and Blanka Elizabeth Filipczak were born on October 7, 2005 and February 17, 2007, respectively. Respondent, Petitioner and the Children lived together at Petitioner's apartment in Warsaw until about November 2007, at which point Respondent moved out of the apartment with the Children. Since November 2007, Respondent and Petitioner have been separated in fact, though, legally, they remain married.

The parties vigorously dispute the facts surrounding Respondent's decision to take the Children and leave the family's home. According to Respondent, she left Petitioner shortly after a late night in October 2007 during which Petitioner arrived home intoxicated and verbally and physically assaulted her in the presence of their older daughter, who was then two years old. Petitioner recalls non-violent domestic disputes between the parties prior to Respondent's leaving their shared apartment, but attributes those disputes to Respondent's frequent intoxication and neglectful parenting. There is no evidence of any other incidents of domestic violence and Respondent makes no allegation that Petitioner ever threatened or harmed the Children.

From November 2007 to January 28, 2010, Respondent and the Children continued to reside in Warsaw. Throughout this

---

**1.** All facts set forth herein represent the Court's findings of fact and are drawn from the parties' submissions, the Guardian's Report and the Court's consideration of the testimony and evidence presented at the Hearing. Except where a document is specifically referenced, no citations will be provided.

time, Petitioner provided financial support to Respondent and the Children, though the amount and consistency of such support is disputed. On March 24, 2009, a Polish court granted visitation rights to Petitioner. Respondent controlled Petitioner's access to the Children during this period, initially permitting multiple visits per week, but, according to Petitioner, ultimately withholding the Children from Petitioner entirely. Petitioner last saw the Children in September 2009, when Respondent brought the Children to Petitioner's apartment unexpectedly. Respondent's last communication with Petitioner, while still in Poland, was a voicemail she left for Petitioner on October 9, 2009, two days after Zofia's fourth birthday.

Respondent, a United States citizen, returned to the United States with the Children in January, 2010 upon the expiration of her Polish visa. Zofia was just over four years old and Blanka was just under three when they arrived. Since arriving in the United States, Respondent and the Children have resided in Chicago (briefly), Manhattan (in both a domestic violence facility and private apartment) and, now, in New Haven, Connecticut. In New Haven, the Children live with Respondent's current fiancé, who appears to support Respondent and the Children financially. The Children—who have dual Polish and United States citizenship by virtue of their parents' nationalities—have been enrolled in several different schools and various extracurricular and religious programs.

It is unclear from the record when, precisely, Petitioner learned of the Children's departure from Poland and arrival in the United States. Petitioner testified that he undertook various efforts to locate Respondent and the Children after September 2009, including contacting the Children's schools in Poland; calling and emailing Respondent, her friends and fam-

ily; contacting the American Embassy in Warsaw; and engaging the assistance of the Polish police. When informed by the Polish police that Respondent had likely taken the Children to the United States in January 2010, Respondent filed a Request for Return under the Hague Convention with the Polish Central Authority on September 19, 2010.

Petitioner has initiated a divorce and custody proceeding against Respondent in a Polish court in Warsaw. Respondent, though aware of the Polish divorce proceeding, has neither been served in that action nor appeared therein. The Polish divorce proceeding will determine custody of the Children and, therefore, dictate whether the Children will ultimately reside with Petitioner or Respondent.

### III. *ANALYSIS*

### A. *THE LEGAL FRAMEWORK UNDER THE HAGUE CONVENTION*

■ In considering a Hague Convention petition, a court has jurisdiction only over the claim for wrongful removal of children. *See* Hague Convention, art. 16, *reprinted in* 51 Fed.Reg. 10,495, at 10,500; 42 U.S.C. § 11601(b)(4); *Diorinou v. Mezitis*, 237 F.3d 133, 140 (2d Cir.2001). The merits of any underlying custody claim are of no concern in a Hague Convention case. *See Blondin v. Dubois*, 189 F.3d 240, 245 (2d Cir.1999) (*citing Friedrich v. Friedrich*, 983 F.2d 1396, 1400 (6th Cir.1993)).

> Put differently, the focus of a court's inquiry in a Hague Convention case is not "the best interests of the child," as it typically is in a state custody case; rather it is the specific claims and defenses under the Convention, namely whether a child has been wrongfully removed to, or retained in, a country different from the child's habitual residence and, if so, whether any of the Convention's defens-

es apply to bar the child's return to his habitual residence.

*In re Lozano,* 809 F.Supp.2d 197, 217 (S.D.N.Y.2011) (*quoting Hazbun Escaf v. Rodriquez,* 200 F.Supp.2d 603, 610–11 (E.D.Va.2002)).

■ The Hague Convention requires children "wrongfully removed" from their country of habitual residence to be returned to that country unless one of four enumerated exceptions applies. *See Abbott v. Abbott,* — U.S. —, 130 S.Ct. 1983, 1987, 176 L.Ed.2d 789 (2010); *Blondin,* 189 F.3d at 245. Here, Respondent concedes that she "wrongfully removed" the Children from their country of habitual residence.

Respondent argues that two of the four exceptions set forth in the Hague Convention apply. Specifically, Respondent asserts that the Children face a "grave risk" if returned to Poland and that the Children are "well-settled" in the United States. *See id.* at 245–46 (describing exceptions set forth in Hague Convention). "As the federal statute implementing the Convention makes clear, these four exceptions are meant to be 'narrow.'" *Id.* at 246 (*citing* 42 U.S.C. § 11601(a)(4)). "Even where the respondent meets his or her burden to show that an exception applies, the court may nevertheless exercise discretion to order repatriation." *Matovski v. Matovski,* No. 06 CV 4259, 2007 WL 2600862, at *7 (S.D.N.Y. Aug. 31, 2007); *see also Blondin,* 189 F.3d at 246 n. 4 ("[E]ven where the grounds for one of these 'narrow' exceptions have been established, the district court is not necessarily bound to allow the child to remain with the abducting parent.").

The Court will review each asserted exception in turn.

## B. THE "GRAVE RISK" EXCEPTION

The Court "is not bound to order the return of the child if the person … [who] opposes [the child's] return establishes that … there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Hague Convention, art. 13(b), *reprinted in* 51 Fed.Reg. 10,495, at 10,499. Respondent must establish this defense by "clear and convincing evidence." 42 U.S.C. § 11603(e)(2)(A). By including this exception, the Hague Convention recognizes that "[t]he interest of the child in not being removed from its habitual residence … gives way before the primary interest of any person in not being exposed to physical or psychological danger or being placed in an intolerable situation." *Blondin v. Dubois,* 238 F.3d 153, 161 (2d Cir.2001) ("*Blondin II*") (second alteration in original) (internal quotation marks omitted). However, "[t]he level of risk and danger required to trigger this exception has consistently been held to be very high." *Norden–Powers v. Beveridge,* 125 F.Supp.2d 634, 640 (E.D.N.Y.2000).

■ In evaluating an assertion that the grave risk exception applies, a court should analyze the type of potential harm alleged:

> [A]t one end of the spectrum are those situations where repatriation might cause inconvenience or hardship, eliminate certain educational or economic opportunities, or not comport with the child's preferences; at the other end of the spectrum are those situations in which the child faces a real risk of being hurt, physically or psychologically, as a result of repatriation. The former do not constitute a grave risk of harm under Article 13(b); the latter do.

*Blondin II,* 238 F.3d at 162. As the United States Department of State has ex-

plained: The grave risk exception "was not intended to be used by defendants as a vehicle to litigate (or relitigate) the child's best interests." Public Notice 957, Hague International Child Abduction Convention; Text and Legal Analysis, app. C ("State Dep't Legal Analysis") § III(I)(2)(c), 51 Fed.Reg. 10,494, 10,510 (Mar. 26, 1986). Moreover, "[o]nly evidence directly establishing the existence of a grave risk that would expose the child to physical or emotional harm or otherwise place the child in an intolerable situation is material to the court's determination. The ... risk to the child [must be] grave, not merely serious." *Id.*

Though the risk of future abuse may constitute grave risk, *Blondin,* however, "by no means implies that a court must refuse to send a child back to its home country in *any* case involving allegations of abuse, on the theory that a return to the home country poses a grave risk of psychological harm." *Blondin II,* 238 F.3d at 163 n. 12 (emphasis in original). The grave risk analysis must be based upon the "specific facts presented in th[e] case" before the court. *Id.* "Applying these standards after *Blondin,* district courts within the Second Circuit that have denied repatriation under the grave risk exception have done so in cases involving very serious abuse." *In re Lozano,* 2011 WL 3667444, at *21 (*citing Elyashiv v. Elyashiv,* 353 F.Supp.2d 394, 408–09 (E.D.N.Y. 2005); *Reyes Olguin v. Cruz Santana,* No. 03 CV 6299, 2005 WL 67094, at *2–4, *11–12 (E.D.N.Y. Jan. 13, 2005)).

█ In this case, the Court has been presented evidence of one incident that— accepting Respondent's testimony entirely and wholly rejecting that of Petitioner— could be classified as abuse within the meaning of the Hague Convention. Respondent testified that the elder daughter, Zofia, witnessed that incident. According to the Guardian's Report, however, Zofia has no recollection of that event, which is unsurprising given that she was roughly two years old at the time. This situation simply does not rise to the level of "grave risk" under the standard articulated above. The Court's conclusion is in harmony with that of several other district courts in this circuit. *See, e.g., Rial v. Rijo,* No. 10 CV 1578, 2010 WL 1643995, at *2–3 (S.D.N.Y. Apr. 23, 2010) (ordering return of child to Spain, despite evidence that petitioner was verbally and sometimes physically abusive to respondent, including at times in front of the child, because court concluded that risk of harm to child was not grave); *Lachhman v. Lachhman,* No. 08 CV 4363, 2008 WL 5054198, at *9 (E.D.N.Y. Nov. 21, 2008) (concluding that evidence of petitioner's previous arrest, but not conviction, on domestic abuse charges in England was insufficient to establish grave risk, where there was no evidence that petitioner had ever harmed child); *Laguna v. Avila,* No. 07 CV 5136, 2008 WL 1986253, at *8–9 (E.D.N.Y. May 7, 2008) (finding insufficient evidence to establish grave risk, where petitioner had been violent to respondent but there was no evidence that petitioner physically abused child).

In short, courts that have applied the grave risk exception "have focused on evidence of a sustained pattern of physical abuse and/or a propensity for violent abuse[, whereas] [e]vidence of sporadic or isolated incidents of abuse, or of some limited incidents aimed at persons other than the child at issue, have not been found [to constitute] 'grave risk[.]'" *Laguna,* 2008 WL 1986253, at *8 (citation omitted). The Court finds that this case fits squarely within the latter category and that the Respondent has failed to establish that the Children would encounter grave risk if returned to the Petitioner in Poland.

Further, many "courts that determined that the [grave risk] exception applied have done so when presented with uncontroverted expert testimony and other credible evidence that the child would face grave risk if returned." *In re Lozano*, 2011 WL 3667444, at *22–23. In this case, no expert testimony has been presented and the only impartial opinion provided-that of the Guardian *ad litem*—found no support whatsoever for the application of the grave risk exception. (Guardian's Report at 2.)

The Guardian's Report, based upon observing videoconferences between the Children and Petitioner, describes "warm" interactions and notes that "it appears that the [C]hildren were well taken care of in Poland and lived there safely...." (Guardian's Report at 1, 2.) Petitioner has also committed to financially support the Children if they are returned to Poland and evidence presented at the Hearing indicates that he is capable of doing so. (*See* Endorsed Letter from Kelly C. Holden (Docket No. 29) at 1–2.)

In sum, Respondent bears a heavy burden to show that the Children should not be returned to Poland because of the grave risk exception under the Hague Convention. The Court finds that Respondent has clearly failed to carry that burden.

### C. THE "WELL–SETTLED" EXCEPTION

Respondent's invocation of the well-settled exception presents the Court with a closer case, though, ultimately, that exception also does not apply here.

■ Where more than one year has elapsed between the date of the wrongful removal of a child and "the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is," a court "shall [ ] order the return of the child, unless it is

demonstrated that the child is now settled in its new environment." Hague Convention, art. 12, *reprinted in* 51 Fed.Reg. 10,495, 10,499. To successfully invoke the well-settled exception, "Respondent must persuade the Court, by a preponderance of the evidence, that the [C]hild[ren] should not be returned to [Poland] because the [C]hild[ren] ha[ve] been in [the United States] for more than one year and ha[ve] become settled." *In re Lozano*, 2011 WL 3667444, at *23 (*citing* 42 U.S.C. § 11603(e)(2)(B)). The Hague Convention "does not define 'settled' or state how this defense is to be proved, but" confers "discretionary power" on the Court "to determine whether or not the defense justifies refusing to repatriate the [C]hild[ren]." *Id.* (citations omitted).

■ "To the extent that" the Hague Convention allows a court to "deny repatriation on th[e] basis" of the well-settled exception, "it effectively allows [the court] to reach the underlying custody dispute, a matter which is generally outside the scope of the [Hague] Convention." *Blondin II*, 238 F.3d at 164. Though the Hague Convention allows invocation of the well-settled exception only after the child has resided in a new country for more than one year, "there is nothing magical about one year, [and] its basic purpose is designed to serve the best interests of the child...." *In re Lozano*, 2011 WL 3667444, at *24 (*quoting In re Robinson*, 983 F.Supp. 1339, 1345 (D.Colo.1997)). In the words of the United States Court of Appeals for the Second Circuit, "if more than one year has passed, a demonstration that the child is now settled in its new environment may be a *sufficient* ground for refusing to order repatriation," but it does not compel that result. *Blondin II*, 238 F.3d at 164 (emphasis in original); *Blondin*, 189 F.3d at 246 n. 4 (noting that even if exception has been established, "the district court is not necessarily bound

to allow the child to remain with the abducting parent").

■ The Hague Convention, then, permits a court to consider the totality of the circumstances regarding a child's welfare and to determine if that child is well settled. Given the Convention's underlying goals, as interpreted by the United States Department of State, "nothing less than substantial evidence of the child's significant connections to the new country is intended to suffice to meet the respondent's burden of proof." State Dep't Legal Analysis § III(I)(1)(c), 51 Fed.Reg. at 10,509.

> Among the factors that courts have considered in determining whether or not a child has become settled are: the age of the child; the stability of the child's residence in the new environment; whether the child attends school or day care consistently; whether the child attends church or other religious institutions regularly; the stability of the mother's employment; and whether the child has friends and relatives in the new area.

*In re Lozano,* 2011 WL 3667444, at *28 (internal quotations and alterations omitted) (providing string citation of cases). In addition, the Court must also consider evidence concerning the Children's contacts with and other ties to their State of habitual residence, here, Poland. *Id.* at *24 (*citing* State Dep't Legal Analysis § III(I)(1)(c), 51 Fed.Reg. at 10,509).

■ Weighing all evidence on the record here, the Court is not persuaded by Respondent's argument that the Children are well settled in the United States. First, the Children are still very young and, though they have adapted well to life in the United States, it does not necessarily follow that they will likely not adapt well to life back in Poland. As the guardian *ad litem* reported, "[t]he [C]hildren are comfortable in their home, enjoy a close rela-

tionship with Respondent's fiance, do well in school[,] have made friends ... [and] have nicely acclimated to living in the United States." (Guardian's Report at 2.) However, the Guardian went on to point out that the Children are "smart and vibrant young girls who can readily adapt to change and have done so." (*Id.* at 3.) In short, because they are young, engaged and intelligent, the Children are likely able settle into any environment rather quickly—be it New Haven or Warsaw.

As noted above, the Children have lived in multiple cities and attended multiple schools since arriving in the United States. The Children now reside with and are supported by Respondent's fiance, who appears to have a positive relationship with the Children and appears to be a responsible adult presence in their lives. However, Respondent's relationship with her fiance might present a potential source of instability for the Children because the Respondent, who is currently both a student and pregnant, appears to be financially dependent upon her fiance and because they cannot actually become married until Respondent and Petitioner's marriage is legally dissolved.

There is evidence that the Children are engaged in their academic and extracurricular activities and have become integrated into Respondent's family here in the United States. However, there is also evidence that the Children have an extended family awaiting them in Poland and will be provided for and loved there as well. (*See* Guardian's Report at 3.) At the Hearing and through a video submitted to the guardian *ad litem,* Petitioner established that the Children enjoyed a close relationship with their father while they lived in Poland. Though they no longer speak Polish, Petitioner speaks English and the Children have expressed an interest in learning Polish. (*Id.*) The Children are in the fortunate position of having loving par-

ents and caring, intact extended families in two countries.

Here, Petitioner initiated the instant action a year and twenty-five days after the Children were brought to the United States. He spent a significant portion of that time searching for the Children and overcoming Respondent's refusal to communicate with him. Under such circumstances, application of the well-settled exception would create perverse incentives by rewarding Respondent for concealing from Petitioner that she had brought the Children to the United States. Petitioner acted on his rights under the Hague Convention very soon after learning that the Children were in the United States, filing his initial requests with Polish authorities in the same month that Polish police informed him that the Children were in this country. Thus, it is clear that, but for Respondent's refusal to communicate with Petitioner, the instant Petition would have been filed within a year of the Children's expatriation and recourse to the well-settled exception would have been foreclosed under the language of the Hague Convention. As such, application of the well-settled exception here would be acutely inequitable.

Under the facts of this case and in consideration of significant evidence that the Children's welfare will not be permanently harmed if returned to Poland, the Court cannot find grounds to apply the well-settled exception to this case.

### D. *CONCLUSION*

For the reasons discussed above, the Court finds that the Children must be returned to Poland under the Hague Convention because Respondent has failed to establish the applicability of any of the pertinent exceptions. While the Court is sympathetic to the disruption that a return to Poland may cause in the lives of Respondent and the Children, the Court must faithfully apply the Hague Convention, which mandates that the underlying custody dispute be resolved in the Children's country of habitual residence, Poland. The Court also takes into account that it cannot prejudge the outcome of the proceedings in Poland. Conceivably, either by determination of the Polish court or by consensual agreement between the parties, Respondent could obtain custody of the Children and they could return to the United States at the earliest opportunity.

### IV. *ORDER*

Accordingly, it is hereby

ORDERED that Petitioner Wojciech Filipczak's Petition for the Return of the Children to Poland Under the Hague Convention (Docket No. 1) is **GRANTED.**

The Clerk of Court is directed to terminate any pending motions and to close this case.