**In the Matter of Kelley Ann MCKENZIE, infant under the age of 16,**

**Martina McKenzie, Petitioner,**

v.

**Linley McKenzie, Respondent.**

**No. 01 CV 630(SJ).**

United States District Court, E.D. New York.

Oct. 10, 2001.

48

Robert S. Arenstein, New York City, for petitioner.

Rochman, Platzer, Fallick & Sternheim, New York City, by Irwin Rochman, for respondent.

## ORDER

JOHNSON, District Judge.

Martina McKenzie ("Petitioner"), a resident and citizen of Germany, petitioned this Court on September 24, 2001 for the return of her daughter, Kelley Ann McKenzie (the "Child"), from the United States to Germany. The petition was brought pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, (the "Hague Convention"), as implemented by the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601–10 (1988).

Linley McKenzie ("Respondent") is the father of the Child.

■ The Convention provides for the prompt return of children under the age of 16 who have been removed to or wrongfully retained in a country which is a signatory to the Convention. Furthermore, the Convention will only apply where the country from which the child was removed is also a party to the Convention. In this case, both the United States and Germany are signatories to the Convention. Under Article 19 of the Convention, and 42 U.S.C. § 11601(b)(4), the Court may determine whether the child is to be returned, but may not address the merits of any underlying custody dispute. *Friedrich v. Friedrich*, 983 F.2d 1396, 1400 (6th Cir.1993).

■ In order to prevail in the instant case, Petitioner must show that the Child was "wrongfully removed" by Respondent within the meaning of the Convention. The Convention defines wrongful removal as "[t]he removal or retention of a child ... where it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention ..." Hague Convention Article 3(a). It is uncontroverted that both Germany and the United States are signatories to the Convention. Neither is it disputed that Petitioner has custody rights in Germany and that Respondent removed the Child from Germany to the United States, without the knowledge of Petitioner. As both parties agree, the outcome of this case turns on the location of the Child's habitual residence immediately prior to being removed to the United States by Respondent.

On October 2, 2001, this Court heard argument and evidence relating to the instant petition (the "hearing"). Both parties were provided an opportunity to present witness testimony and documentary evidence. After a review of the record, this Court hereby finds that Petitioner has sustained her burden of proving that the Child should be returned to Germany, the country of her habitual residence.

At the hearing, both Petitioner and Respondent testified. The Court credits the testimony of Petitioner and makes the following factual findings. Petitioner and Respondent met in Munich, Germany in 1996 and were married in Copenhagen, Denmark on March 10, 1997. (Tr. at 9, 26.) Petitioner and Respondent are the parents of the Child, born August 14, 1997 in Munich. *Id.* Petitioner, Respondent, and the Child lived together with Petitioner's parents in Munich until October 1998. (Tr. at 12.) From October 1998 until December 1998, Petitioner and the Child continued to live with Petitioner's parents, while Respondent resided in Munich with a friend. *Id.* From December 1998 until April 2000, Petitioner, Respondent and the Child lived together in Munich, in an apartment separate from Petitioner's parents. (Tr. at 12–13.) In May 2000, Petitioner and the Child moved to another apartment in Munich, separate and apart from where they had lived with Respondent. (Tr. at 13.) Petitioner and the Child continue to maintain this residence. (Tr. at 13.)

In November 2000, Petitioner, the Child, and Respondent moved to New York City where Respondent had obtained employment as a broadcast technician at Lifetime Television. (Tr. at 13, 44.) Prior to coming to the United States, Petitioner understood that she would be free to return to Germany with the Child if she was unhappy in the United States. (Tr. at 38, 47–48.) After arriving in New York in November 2000, Petitioner expressed to Respondent, on several occasions, her desire to return to Germany. (Tr. at 14, 51.)

Although Petitioner was working in New York as a gymnastics instructor and had obtained a green card, Petitioner maintained her apartment in Munich and had not resigned from her job at a real estate management firm, choosing instead, to take a leave of absence. (Tr. at 24, 42, 59.) Additionally, the Child was registered to begin school in Munich in September 2001. (Tr. at 17.)

On August 15, 2001, Petitioner, Respondent, and the Child returned to Germany (Tr. at 50–53.) While Respondent intended their trip as a vacation, Petitioner intended that she and the Child would not return to the United States and would remain in Germany. *Id.* On September 5, 2001, after indicating to Petitioner that he was taking the Child to a birthday party, Respondent removed the Child to the United States, without the knowledge of Petitioner. (Tr. at 18, 61.) Petitioner began custody proceedings in Germany on September 6, 2001 and returned to New York that same day with hopes of retrieving the Child. (Tr. at 21–22.) Respondent subsequently initiated custody proceedings in New York Supreme Court, Queens County, however, pursuant to this Court's Order, those proceedings are stayed pending the outcome of this action.

As outlined above, the only relevant factual dispute before the Court is whether Germany or the United States was the habitual residence of the Child immediately prior to her being removed from Germany by Respondent. Petitioner argues that Germany was the Child's habitual residence because neither the Child nor Petitioner relinquished their ties to Germany when they came to the United States in November 2000. Petitioner cites the fact that Petitioner maintained an apartment in Germany, was on a leave of absence from her job, and had enrolled the Child in kindergarten in Munich as indices of the temporary nature of their trip to the United States. Respondent contends that the Child's habitual residence was the United States and asserts that Petitioner brought the Child to the United States in November 2000 with the intent to remain indefinitely.

■ As neither the Convention nor the ICARA defines the term "habitual residence", the Courts have been left to their own interpretations in light of the facts of each individual case. *Diorinou v. Mezitis,* 132 F.Supp.2d 139, 143 (S.D.N.Y.2000). The concept is by no means a formulaic one. "Place of habitual residence is determined more by a state of being than by any specific period of time; technically, habitual residence can be established after only one day as long as there is some evidence that the child has become 'settled' into the location in question." *Brooke v. Willis,* 907 F.Supp. 57, 61 (S.D.N.Y.1995).

■ In this case, the Court finds that the Child's habitual residence is Germany. Although the Child was in the United States from November 2000 until August 2001, the Court is not persuaded that the Child was settled in the United States with any sort of permanence. From the testimony presented, the Court finds that Petitioner and Respondent came to the United States on a trial basis and that Petitioner, a German citizen, maintained a residence in Germany, as well as occupational and familial ties with that country. Furthermore, the Child lived in Germany for the majority of her life and has well-established ties to that country. The evidence is sufficient for this Court to conclude that at all times relevant to this proceeding, Germany remained the Child's habitual residence.

For the foregoing reasons, the Court finds that an order of return is justified and hereby Orders the following:

1) pursuant to the provisions of the Convention and or the ICARA, the Child is to be returned in the company of Petitioner to Germany and Petitioner is to report the delivery of the Child to the appropriate authorities within that jurisdiction; and

2) any peace officer in the state of New York or any federal officer is hereby commanded to enforce the instant Order allowing Petitioner to remove the Child from the United States and to allow Petitioner to accompany the Child to Germany, without interference.

This Order is not a determination of any custody issues within the meaning of Article 19 of the Convention.

SO ORDERED.